IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GLENBROOK PATIOHOME, | § | |
| OWNERS ASSOCIATION | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-2929 |
| | § | |
| LEXINGTON INSURANCE COMPANY, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a suit to recover insurance proceeds and damages under the Texas Insurance Code and common law. The insurer, Lexington Insurance Company ("Lexington") has moved to compel appraisal under the Real and Personal Property, Business Interruption Insurance policy issued to the insured, the Glenbrook Patiohome Owners Association. (Docket Entry No. 9). Glenbrook opposes the motion on the grounds that this suit primarily involves coverage and causation issues, not subject to appraisal, and that Lexington waived its contractual right to seek appraisal. (Docket Entry No. 12, 26). Based on a careful consideration of the record and the applicable law, this court finds that while the case does involve issues of coverage and causation, it also involves a dispute over the cost of repairing damaged property that is subject to appraisal, and Lexington did not waive its right to invoke that appraisal. The motion to compel is granted, but the case is not stayed pending the appraisal. The litigation on the coverage and causation issues will continue while the appraisal on the disputed valuation issues takes place. The reasons for this ruling are set out below.

**I.      Background**

Glenbrook is the association of owners of a 21 building complex of residential condominiums located in Houston, Texas. Lexington issued Glenbrook Real and Personal Property, Business Interruption Insurance Policy No. 032582700 (the "Policy"). The Policy is subject to a $100,000 deductible.

Hurricane Ike hit the gulf coast area in September 2008. Glenbrook claims that several of the condominium units suffered extensive damage, including water damage to many unit interiors as a result of roof damage. Glenbrook alleges that the property also suffered "substantial structural and exterior damage," including a balcony knocked off the structure, parts of the framing torn away from the roof, holes in the sides of several buildings, and damage to carport covers. (Docket Entry No. 1, Ex. 1, at 6). Lexington opened a file for Glenbrook's claim, No. 40045703854, on September 24, 2008. (Docket Entry No. 26, Ex. A–3 at 20). Lexington hired Cunningham Lindsey to adjust the claim and Larry Couvillon was assigned as an adjuster on October 2, 2008. (*Id.* at 19 ("A new assignment for CLAIM ADJUSTING services has been assigned to Larry Couvillon at Cunningham Lindsey to perform the following services: . . . Obtain agreed cost of repairs.")). Couvillon conducted multiple inspections in 2009 and submitted estimates of the costs to repair covered damage, less depreciation and deductible. (Docket Entry No. 26, Ex. C). Glenbrook's insurance agent/broker, Olivia Conejo at the Migura Insurance Agency in Stafford, Texas, and Jonathan Hilsher at Southwest Risk, LP in Dallas, Texas, facilitated communications between Glenbrook and Cunningham Lindsey. (*Id.*, Ex. B). In July 2009, Cunningham Lindsey, on Lexington's behalf, informed Glenbrook that the covered damages were less than the $100,000 Policy deductible. (*Id.* at 1–2).

On October 16, 2009, Couvillon at Cunningham Lindsey was sent a question by Hilsher at

Southwest Risk, who in turn received it from Conejo at the Migura Insurance Agency. The inquiry was as follows:

> The board president is asking if the carports would have been covered under the policy as the deductible had applied per building. Can you get something from the adjuster written advising yes or no? If no, to explain why?
>
> The insured thinks they should at least get the carports repaired as they are a separate item listed on the SOV. I'm not sure how the deductible would apply to this. Please advise.

(Docket Entry No. 26, Ex. B).[1]  Couvillon responded:

> Repairs to carports was included in this claim. Our adjuster figured over $82,000 worth of carport repair. In claims where the 3% of TIV is apportioned to each building, we were instructed to apply carport repair to whichever building's calculations worked out to the best benefit to the insured. However, in this case, the $100,000 minimum deductible had to be applied. The $100,000 min deductible is a flat (non-apportioned) deductible. Which means, all repairs to all buildings and carports are added up, then $100,000 deductible is applied. In this particular claim, the RC repair was $89,000. We waived any depreciation. The RC repairs did not exceed the deductible.
>
> All of this was sent to the insured in July as well as estimate copies.

(Docket Entry No. 26, Ex. C). The record contains no response from Glenbrook or an agent or broker on its behalf.

Glenbrook sent a letter to its homeowners dated March 3, 2010. The letter reads, in part:

> As you know, your Homeowners Association has been working diligently to make our Insurance Provider live up to its contractual obligations. After months of fighting and arguing with the insurance company, as most of you are currently aware, our Insurance Provider

---

[1] Lexington notes, correctly, that the e-mail from Glenbrook's agent went only to Jonathan Hilsher at Southwest Risk, not to Cunningham Lindsey or Lexington. It has cited no authority to support the position that Cunningham Lindsey's receipt of the request for explanation indirectly cannot give the insurer notice. This court assumes, without deciding, that notice to the independent adjuster through third parties is sufficient.

>>has denied any payments relating to our Hurricane Ike storm damage claim. This matter is causing many of us a great deal of inconvenience and stress and we were left with nowhere to turn. I am writing to inform you that the Homeowner's Association has recently hired legal representation to take over the fight on our behalf and to ensure that our claim is handled effectively and efficiently.

(Docket Entry No. 26, Ex. B at 12). There is no evidence that Lexington or Cunningham Lindsey received this letter.

On June 10, 2010, Glenbrook sued Lexington; the independent claim adjusting firm, Cunningham Lindsey; and the individual adjusters who had worked on the claim, including Couvillon. (Docket Entry No. 1, Ex. A).[2] The petition alleged inadequate inspections, including that the adjusters did not go onto the roof of any of the buildings; that Lexington "failed to take into account several specific instances of obvious damage"; and that there were "numerous instances of damage that Defendants erroneously claim were pre-existing." (*Id.* ¶ 31). The petition alleged that Lexington refused coverage for some of the damages and underscoped other damages during the investigation. Glenbrook alleged breach of the insurance contract; violations of the Texas Insurance Code, § 541.060, *et seq.*; fraud; conspiracy to commit fraud; and breach of the duty of good faith and fair dealing. Glenbrook filed the suit in Texas state court.

Lexington received service through the Texas Commissioner of Insurance on July 22, 2010. (Docket Entry No. 1 ¶ 2). On August 15, 2010, Lexington timely removed. On the same date, Lexington's attorney sent Glenbrook's attorney a letter demanding appraisal. (Docket Entry No. 9, Ex. B-1). The letter reads, in part:

>>We are counsel to Lexington Insurance Company

---

[2] Glenbrook also sued Southwest Risk, L.P. and Jonathan Hilsher, but those parties were dismissed on Glenbrook's motion. (Docket Entry Nos. 15, 18)

4

> ("Lexington") with respect to the claim that your client, Glenbrook Patiohome Owners Association, has asserted under the above captioned policy. To date, Lexington has completed its evaluation of the claim and has paid what it reasonably believes is owed for this loss, net of applicable deductible. Your client apparently claims additional damages. Lexington disagrees that these amounts are owed under the Policy.
>
> In order to resolve the dispute about the amount of the damages that are owed, Lexington invokes the appraisal provision of the Policy. . . . In accordance with this provision, Lexington has selected Van Fisher as its appraiser. Please advise us of the name an contact information for your appraiser.

(*Id.*).

The Policy's appraisal provision states:

> If we and you disagree on the value of the property or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
>     a.    Pay its chosen appraiser; and
>
>     b.    Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

(Docket Entry No. 9, Ex. A., Form CP 0010 (Ed. 7/88) at 6).

On September 3, 2010, Lexington moved to compel appraisal under the terms of the insurance policy, (Docket Entry No. 9). Glenbrook responded, requesting limited discovery, (Docket Entry No. 12). This court ordered Lexington to produce its claim file. (Docket Entry No. 19). After receiving documents from Lexington, Lexington supplemented its motion, (Docket Entry

5

No. 23), Glenbrook responded, (Docket Entry No. 26), and Lexington replied, (Docket Entry No. 27).

On September 28, 2010, Glenbrook received an estimate from an adjuster it retained, Loss Solutions. The estimate showed $804,699.04 of property damage from Hurricane Ike. (Docket Entry No. 23, Ex. 2). The estimate states that it was based on an inspection conducted by Nelson Jones on July 9, 2010. (*Id.* at 000097; Docket Entry No. 23, Ex. 3, Nelson Jones Report). Lexington asserts that it did not see or hear of either document until October 5, 2010, more than a month after it demanded appraisal.

Lexington asserts that it timely demanded appraisal after it knew that Glenbrook disputed the determination of the amount of losses as well as whether certain categories of losses were covered. Glenbrook asserts that Lexington waived its right of appraisal by its delay and that there is no basis to compel appraisal because the primary dispute in this case is over coverage and causation, not valuation. Each argument is analyzed below.

## II.     The Legal Standard

Texas insurance policies frequently include provisions specifying appraisal to resolve disputes about the amount of loss under the policy. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888–89 (Tex. 2009). "An appraisal clause 'binds the parties to have the extent or amount of the loss determined in a particular way.'" *Id.* at 895 (quoting *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002)); *see also Lundstrom v. United Servs. Auto. Ass'n-CIC*, 192 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court."). An appraiser must "decide the 'amount of loss,' not

to construe the policy or decide whether the insurer should pay." *Johnson*, 290 S.W.3d at 890. "Unless the 'amount of loss' will never be needed . . . appraisals should generally go forward without preemptive intervention by the courts." *Id.* at 895.

The contractual right to appraisal may be waived. *See, e.g.*, *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 561 (Tex. App. — Houston [14th Dist.] 2010, orig. proceeding). Waiver is defined as the "intentional relinquishment of a known right." *JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x 744, 748 (5th Cir. 2009) (per curiam) (summary calendar) (unpublished). Courts applying Texas law follow the standard articulated long ago in *Scottish Union & Nat. Ins. Co. v. Clancey*, 8 S.W. 630, 632 (Tex. 1888), to determine whether an insurer's acts amount to waiver: "To constitute waiver, the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss."[3] *See, e.g.*, *Woodward v. Liberty Mut. Ins. Co.*, No. 3:09-CV-0228-G, 2010 WL 1186323, at *4 (N.D. Tex. Mar. 26, 2010); *In re Sec. Nat'l Ins. Co.*, No. 14-10-00009-CV, 2010 WL 1609247, at *5 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, orig. proceeding) (mem. op., not designated for publication); *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d at 563.

A delay in invoking appraisal may also constitute a waiver if the delay is long enough to "show an intention to yield the known right." *Sanchez v. Property and Cas. Ins. Co. of Hartford*, 2010 WL 413687 at *4 (S.D. Tex. 2010) (quoting *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d

---

[3] Other cases quote similar language from *Scottish Union & Nat. Ins. Co. v. Clancey*, 18 S.W. 439, 441 (Tex. 1892): "[T]he acts relied on as constituting a waiver should be such as are reasonably calculated to make the assured believe that a compliance on his part with the stipulations providing the mode of proof of loss, and regulating the appraisement of the damage done, is not desired, and that it would be of no effect if observed by him." *See, e.g.*, *JM Walker LLC*, 356 F. App'x at 748; *Sanchez v. Prop. & Cas., Ins. Co. of Hartford*, No. H-09-1736, 2010 WL 413687, at *4 (S.D. Tex. Jan. 27, 2010).

7

640, 643 (Tex. 1996)); *see also In re Sec. Nat'l Ins. Co.*, 2010 WL 1609247, at *5 ("Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding circumstances." (citing *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam))). When an insurance policy does not specify a deadline for demanding appraisal, the demand must be made within a reasonable time from the point at which the insurer is on notice that there is "a disagreement over the amount of damages, that is, the point of impasse with the insured." *Sanchez*, 2010 WL 413687, at *5; *accord In re Sec. Nat'l Ins. Co.*, No. 14-10-00009-CV, 2010 WL 1609247, at *5. An insurer may waive appraisal by waiting an unreasonable time to invoke it after impasse is reached on the amount of loss. *Sanchez*, 2010 WL 413687, at *4–5. The appropriate inquiry when an insured argues that the insurer's delay waived its appraisal right is when the insurer knew the appraisal clause could be invoked and whether it timely reacted to that knowledge. *See Dwyer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 288 (5th Cir. 2009); *Cmty. Bank v. BancInsure, Inc.*, No. 2:09-cv-125-TJW, 2010 WL 1068193, at *3 (E.D. Tex. Mar. 22, 2010); *Boone v. Safeco Ins. Co. of Ind.*, Civ. A. No. H-09-1613, 2010 WL 2303311 (S.D. Tex. June 7, 2010).

Waiver is an affirmative defense, and the party alleging waiver has the burden of proof. *JM Walker LLC*, 356 F. App'x at 748; *Sanchez*, 2010 WL 413687, at *4. Whether certain circumstances constitute waiver is a question of law. *JM Walker LLC*, 356 F. App'x at 748; *see also Sanchez*, 2010 WL 413687, at *4 (holding that although waiver is typically a fact question, when the relevant facts are undisputed and clearly established, a court may decide whether a party has waived its contractual right to appraisal as a question of law). "The trial court may determine whether an appraisal has been waived as a matter of law at the preliminary stages of litigation." *Sanchez*, 2010 WL 413687,

at *4 (quoting *Laas v. State Farm Mut. Auto. Ins. Co.*, No. 14-98-00488-CV, 2000 WL 1125287 at *6 (Tex. App.—Houston [14th Dist.] Apr. 22, 2010, orig. proceeding) (unpublished)).

**III.     Analysis**

      **A.     Whether Lexington Provided the Required Discovery**

Glenbrook first argues that this court should deny Lexington's motion to compel appraisal because Lexington failed to comply with this court's order to produce documents related to Glenbrook's claim. This court ordered Lexington to produce the claim file on the Glenbrook property. Many pages were redacted from the claim file that was produced, as irrelevant or privileged. (*See* Docket Entry No. 26, Ex. A). Glenbrook argues that it cannot fully respond to the motion to compel appraisal without access to the complete file or an explanation why certain pages were redacted. Lexington responds that it did produce all the claim file documents relating to Glenbrook's claim. Lexington explains that the file contains all claims made under the Policy, not just the Glenbrook claim that is the subject of this lawsuit. Lexington points to one internal e-mail in the file that reads, in part: "Although this would conclude the handling, this is the AMCAT Ike Master File, so I will not be able to close it." (Docket Entry No. 27, Ex. 4). This corroborates Lexington's explanation. The record provides no basis to conclude that Lexington failed to comply with this court's discovery order.

      **B.     Whether Lexington Waived Its Right of Appraisal**

Glenbrook argues that Lexington has waived its contractual appraisal right by unconditionally denying the claim for property damage under the Policy. *See Womack v. Allstate Insurance Co.*, 156 Tex. 467, 296 S.W.2d 233 (Tex.1956); *In re Acadia Insurance Co.*, 279 S.W.3d 777, 779 (Tex. App.—Amarillo 2007, no pet.). An unconditional denial occurs only when an insurer denies coverage, such that an appraisal of the damages amount will be of no use. *Womack v. Allstate*

*Ins. Co.*, 296 S.W.2d 233, 237 (Tex. 1957).

Glenbrook acknowledges in its petition that Lexington denied the claim because the adjuster's determination of covered damages fell below the Policy deductible. (Docket Entry No. 1, Ex. A ¶ 31). In *Sanchez v. Property and Cas. Ins. Co. of Hartford*, 2010 WL 413687 at *4, the court faced a similar argument and found no waiver. In *Sanchez*, as in the present case, the insurer refused to pay the property damage claim because the loss suffered was found to be below the policy deductible. *Suarez*, 2010 WL 413687, at *5. The court held that because the dispute was at least in part over the amount of damage the insurer found was caused by hurricane winds, a covered occurrence, this was a dispute over the amount of damages. In the present case, Glenbrook acknowledges that at least part of this dispute involves the amount of covered damages, although Glenbrook also argues that the larger part of the dispute involves what categories of damage are covered under the Policy. The courts have held that "'[u]nless the 'amount of loss' will never be needed . . . appraisals should generally go forward without preemptive intervention by the courts." *Johnson*, 290 S.W. 3d at 895; *see also Dwyer*, 565 F.3d at 288 (finding no waiver when the dispute initially appeared to concern coverage, not the amount of loss); *Boone v. Safeco Ins. Co. of Ind.*, Civ. A. No. H-09-1613, 2010 WL 2303311, at *7 ("The position the Boones urge — that the insurer's recognition of some but not all of the damages claimed by the insureds as covered and refusal to pay the full extent of the amounts demanded waives appraisal — is contradicted by the Texas Supreme Court's opinion in *Johnson*). In this case, the record does not show that the parties' dispute can be wholly resolved without determining the amount of loss. The denial of payment did not in itself waive appraisal.

Glenbrook argues that the main issues in this case are disputes over coverage, not disputes over the amount of covered losses. But the Texas Supreme Court has made clear that an insured

10

cannot avoid appraisal because there might be a coverage or causation question that exceeds the scope of appraisal. *State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2009). The court explained that an appraiser can decide the amount of loss without deciding questions of coverage or liability, although the specific questions for the appraiser could vary:

> [W]hen an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts. When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it. When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong. And when the parties disagree whether there has been any loss at all, nothing prevents the appraisers from finding "$0" if that is how much damage they find.

*Id*. at 895 (footnotes omitted). The court held that if "appraisers can never allocate damages between covered and excluded perils, . . . [t]hat would render appraisal clauses largely inoperative, a construction we must avoid." *Id.* at 893. The court rejected State Farm's argument in *Johnson* that there was a causation issue outside the scope of appraisal because there was a dispute about which shingles were damaged by a covered peril and which were not. "[N]othing in the summary judgment record establishe[d] that Johnson's roof was damaged by anything else [but hail]." *Id.* at 891. The court held that "[b]ecause an appraisal has yet to take place . . . the record does not establish that it will exceed the permissible scope of appraisal." *Id.* at 887. The Texas Supreme Court agreed with the lower court that "[a] dispute about how many [items] were damaged and need replacing is surely a question for the appraisers. If the parties must agree on precisely which [items] have been damaged before there can be an appraisal, appraisals would hardly be necessary." *Id.* at 891. The parties in *Johnson* agreed that the insurance policy covered at least some of the roof damage but disagreed as to whether all or only part of the roof had to be repaired or replaced under the policy.

11

"To the extent the parties disagree which [items] needed replacing, that dispute would fall within the scope of appraisal." *Id.*

The *Johnson* court recognized that appraisers cannot "rewrite the policy" or go beyond damage questions entrusted to them. *Id.* at 893. The court held that no matter what an appraiser says, an insurer does not have to pay for excluded perils. *Id.* Without the appraisal, however, the court could not decide whether the appraisers had gone beyond the damages questions. *Id.* That depended on the "nature of the damage, the possible causes, the parties' dispute, and the structure of the appraisal award." *Id.* But the insured could not "avoid appraisal at this point merely because there might be a causation question that exceeds the scope of appraisal." *Id.* Glenbrook's argument does not support denying Lexington's otherwise applicable appraisal right.

Glenbrook next argues that Lexington waived appraisal by its delay in invoking that right. Glenbrook argues that Lexington had notice of an impasse with Glenbrook over the amount of loss by July 2009 but did not invoke appraisal until after this suit was filed. An insurer may compel appraisal after the insured files suit, so long as the insurer has not otherwise waived the right to appraisal. *Dwyer*, 565 F.3d at 288 (holding that a five-week delay between filing suit and invoking appraisal did not show waiver) (citing *Terra Indus., Inc. v. Commonwealth Ins. Co.*, 981 F. Supp. 581, 600 (N.D. Iowa 1997)).

Glenbrook does not argue waiver based on the time that passed between when it filed suit and Lexington invoked appraisal. Instead, Glenbrook argues that Lexington waived based on notice of an impasse about the loss amount. Glenbrook attaches documents showing its contacts with the

adjusters and its insurance agent. (Docket Entry No. 26, Ex. B).[4] Lexington points out that these documents do not indicate that it received any of the communications exchanged between the insured, the insured's agent, or the adjusters. Under Texas law, however, communicating information to an agent is generally the same as communicating it to a principal. *See e.g.*, *Grissom v. Watson*, 704 S.W.2d 325, 326 (Tex. 1986). Texas courts have held that independent adjusters hired to adjust a claim are agents of the insurance companies that hire them. *See, e.g.*, *Dear v. Scottsdale Ins. Co.*, 947 S.W.2d 908, 917 (Tex.App.—Dallas,1997, pet. denied), *overruled on other grounds by Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122-23 (Tex.2001).[5] Notice provided by the communications sent to Couvillon are deemed notice to Lexington.

Lexington argues that none of the documents shows that Glenbrook disputed the amount of the repair costs that the adjuster communicated to the insured or that there was an impasse reached

---

[4] Lexington moved to strike Exhibit B because the documents were not timely disclosed under Fed. R. Civ. P. 26 and because they are not authenticated, *see* FED. R. EVID 901. (Docket Entry No. 28). The documents in Exhibit B do not raise a fact issue sufficient to defeat Lexington's motion for appraisal. Lexington's motion to strike is denied as moot. Glenbrook's untimely disclosure will not preclude their introduction as evidence, unless the untimely disclosure is harmful. FED. R. CIV. P. 37(c)(1). The documents in Exhibit B are not self-authenticating under FED. R. EVID. 902. Glenbrook will need to authenticate them with an affidavit or some other means that will satisfy FED. R. EVID. 901.

[5] Courts have long held that independent adjusters are generally the insurer's agent. *See Markwest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, Civ. A. No. 05-cv-01948-PSF-PAC, 2007 WL 1106105, at * 4 (D. Colo. Apr. 12, 2007) (holding that communications between insurer's lawyer and a retained independent adjuster are privileged); *Safeguard Lighting Sys., Inc. v. N. Am. Specialty Ins. Co.*, No. Civ. A.03-4145, 2004 WL 3037947, at *2 (E.D. Pa. Dec. 30, 2004) (same); *Daimlerchrysler Servs. N. Am. LLC v. Zurich Am. Ins. Co.*, No. B166475, 2005 WL 1460587, at *9 n.6 (Cal. App. June 22, 2005) ("An independent adjuster is an agent hired by an insurer, the principal, to investigate a claim. A principal ordinarily is deemed to have notice of facts known by an agent if the agent in the exercise of ordinary care should communicate those facts to the principal."); *Buchanan v. Switzerland Gen. Ins. Co.*, 455 P.2d 344, 348–49 (Wash. 1969) (holding that actions of an independent adjuster with apparent authority may estop insurer from asserting contractual notice requirement); *Briney v. Tri-State Mut. Grain Dealers Fire Ins. Co.*, 117 N.W.2d 889, 897 (Iowa 1962) (holding that an independent adjuster was "a representative of the defendant to do the things necessary to adjust the loss and, when performing that duty, knowledge gained by him . . . became the knowle[d]ge of the company"); *McCarter v. National Union Fire Ins. Co. of Pittsburgh*, 147 So.2d 104, 107 (La. App. 1963) ("As a general rule, the authority of an independent adjuster is a question of fact to be found from all the evidence on the subject, such person ordinarily being considered a special agent for the company for which he acts, and his authority being, prima facie, coextensive with the business intrusted to him. Where such adjuster is requested to proceed with the adjustment of a loss without specific orders or limitations on his authority, he is employed to do all things customarily done by an adjuster under the circumstances." (citations and quotations omitted)); *Vinton v. Atlas Assurance Co.*, 178 A. 909, 912 (Vt. 1935) ("[An independent adjuster's] power [is] coextensive with the business submitted to him, which was to ascertain the loss and fix and adjust the amount, and beyond that he had no duty to perform and no power to act.").

over such a dispute. The record supports this argument. On October 16, 2009, the agent, Olivia Conejo of Migura Insurance Company, wrote to Jonathan Hilsher, an employee at Southwest Risk, LP, conveying the request from the Glenbrook board president for information about "whether the carports would have been covered under the policy as the deductible had applied per building." The email conveying the request stated that Glenbrook thought it "should at least get the carports repaired as they are a separate item listed on the SOV. I'm not sure how the deductible would apply to this. Please advise." (Docket Entry No. 26, Ex. B).[6] Hilsher sent the questions to Couvillon. On October 20, Hilsher forwarded Couvillon's response stating that repairs to the carports were included in this claim. "Our adjuster figured over $82,000 worth of carport repair. In claims where the 3% of TIV is apportioned to each building, we were instructed to apply carport repair to whichever building's calculations worked out to the best benefit to the insured. However, in this case, the $100,000 minimum deductible had to be applied. The $100,000 min deductible is a flat (non-apportioned) deductible. Which means, all repairs to all buildings and carports are added up, then $ 100,000 deductible is applied. In this particular claim, the RC repair was $89,000. We waived any depreciation. The RC repairs did not exceed the deductible." (*Id.*). The dispute evidenced in these e-mails is not over the cost of repairing the carports. Instead, the dispute is over how the Policy deductible was applied after the amount of repair costs were determined. A dispute over applying the policy terms to a covered loss, as opposed to a dispute over the amount of the covered loss, does not trigger the appraisal right. *Dwyer*, 565 F.3d at 288. In *Dwyer,* the Fifth Circuit held that there was no waiver of an appraisal provision even though the insurer invoked it

---

[6] Lexington notes, correctly, that the e-mail from Glenbrook's agent went only to Jonathan Hilsher at Southwest Risk, not to Cunningham Lindsey or Lexington. It has cited no authority to support the position that Cunningham Lindsey's receipt of the request for explanation indirectly cannot give the insurer notice. This court assumes, without deciding, that notice to the independent adjuster through third parties is sufficient.

for the first time shortly before trial. The case involved a claim under a flood policy for damage due to Hurricane Katrina. The insurer inspected and paid the policy limit for contents and the estimated repair costs less depreciation for flood damage to the building. *Id.* at 285. The insured responded in February 2006 with a letter to the flood insurer and its homeowners policy insurer stating that a contractor's estimate to repair the house was $100,000 more than the combined amounts paid by the flood insurer and the homeowner's insurer combined. *Id.* at 285-86. The insured demanded an additional amount from both insurers, stating that the contractor could not distinguish between wind and flood damage. In response, the insurer told the insured to contact the adjuster, but there was no further communication until August 2006, when the insured sued. *Id.* at 286. The appraisal provision was invoked shortly after the insurer provided an expert witness disclosure that included a detailed repair estimate from a contractor. This estimate revealed that the only dispute was about the cost of doing the repair work, not about the scope of coverage. *Id.* The appellate court reversed the trial court's refusal to order appraisal. *Id.* at 290. The appellate court held that the appropriate waiver inquiry was "when [the insurer] knew that the appraisal clause could be invoked [and] whether it reacted timely to the knowledge." *Id.* at 288. The insurer first learned that the insureds disputed the amount of loss, not coverage or other issues, on the date the contractor's estimate was received in the expert witness disclosure. *Id.* Shortly after this clarification that the insureds challenged only the amount of costs estimated by the adjuster, the insured sought appraisal. "In the context of the ongoing litigation, [the insurer] raised the issue of appraisal in a timely fashion." *Id.; see also Boone*, 2010 WL 2303311, at *12. The question provided to Couvillon about the carports does not show that there was a dispute about the amount or extent of damage to the carports, which would trigger the appraisal right, as opposed to how to apportion the deductible, which would not trigger the appraisal right.

15

Glenbrook also argues that there was "a dispute regarding the amount of damages when [Liberty] alerted [Lexington] of the exclusion of the water damages to the building. . . . Defendants had to create at least six reports during its claim investigation, and still, never included the interior water damages in any of them." (Docket Entry No. 26 at 5). Exhibit B includes two one-page documents that appear to have been faxed by Glenbrook's insurance agent, Olivia Conejo, to John Jay at Cunningham Lindsey on December 1 and 17, 2008. The documents add names to the list of Glenbrook unit owners who "report . . . interior damage from Hurricane Ike." (Docket Entry No. 26, Ex. B at 3, 5). There is also a January 22, 2009 e-mail from Conejo to Jay reporting additional damaged units. (*Id.* at 4). The number of reports of unit owners claiming damage from Hurricane Ike does not show that Lexington was on notice of an impasse over the amount of loss and should have invoked appraisal. The record shows that after these communications, Cunningham Lindsey continued to visit Glenbrook and conduct inspections. (*See* Docket Entry No. 26, Ex. C at 1 (dated April 5, 2009), 16 (dated June 12, 2009)). But there is no evidence of any communication to Cunningham Lindsey or Lexington stating that Glenbrook disagreed with the damages valuation in the later reports. As noted above, insofar as Glenbrook argues that an impasse existed because Lexington excluded the interior damages as not covered, that is not an impasse over loss valuation but instead a dispute over coverage and did not trigger the appraisal right. *See Johnson*, 290 S.W.3d at 889–90 (distinguishing valuation issues, which are amenable to appraisal, from coverage issues, which are not). Glenbrook has not identified or submitted evidence creating a disputed fact issue as to whether Glenbrook communicated to Lexington or its agents that an impasse on the valuation of interior water damage or other categories of loss had been reached.

In addition to the communications that Cunningham Lindsey actually received, Glenbrook attaches the letter it sent to its homeowners dated March 3, 2010 advising that Lexington had denied

16

payments and that attorneys had been hired to pursue the claim. (Docket Entry No. 26, Ex. B at 12). There is no evidence that Lexington or Cunningham Lindsey received this letter. Moreover, the letter does not show an impasse related to loss valuation as opposed to coverage or causation issues. The uncontroverted record evidence shows that Glenbrook's Cunningham Lindsey denied the claim because it concluded that the total amount of covered losses did not reach the Policy deductible. Glenbrook's letter to its residents does not support an inference that Glenbrook had told Lexington or its adjusters of an impasse over the estimated costs of repair. *See Dwyer*, 565 F.3d at 288 (coverage dispute, as opposed to factual dispute about the amount of damages, does not trigger the need to invoke appraisal).

Exhibit B also contains documents that appear to have been sent to Glenbrook's agents at Migura Insurance Agency. Unlike independent adjusters, "an insurance agent or broker is generally an agent of the insured, not the insurer."[7] *First Fin. Ins. Co. v. Scotch 80's Ltd.*, No. 2:08-cv-00862-RLH-LRL, 2010 WL 4005423, at *2 (D. Nev. Oct. 12, 2010) (Nevada law); *see also Boerman v. Am. Empire Surplus Lines Ins. Co.*, 50 F. App'x 248, 250 (6th Cir. 2002) (unpublished) (Michigan law) (citations omitted); *Fleming, Ingram & Floyd, P.C. v. Clarendon Nat'l Ins. Co.*, No. CV 108-075, 2009 WL 516256, at *4 (S.D. Ga. 2009) ("Independent insurance agents are generally considered agents of the insured under Georgia law, and not agents of the insurer." (citing *Se. Express Sys. v. S. Guar. Ins. Co. of Ga.*, 482 S.E.2d 433, 435, 489 (Ga. App. 1997)); *Dreiling v. Maciuszek*, 780 F. Supp. 535 (N.D. Ill. 1991) (holding that independent insurance agent was acting

---

[7] The Texas Insurance Code provides that "a person is the agent of the insurer for which the act is done . . . if the person . . . examines into, adjusts, or aids in adjusting a loss for or on behalf of the insurer." TEX. INS. CODE § 4001.051(b)(9). The Code provides that "this definition applies only "for purposes of the liabilities, duties, requirements, and penalties provided by this title," — a regulatory title that imposes certain licensing and certification requirements on insurance "agents." *Id.* § 4001.051. The definition does not make an insurance agent an agent of the insurer in this context. *Interspan Distrib. Corp. v. Liberty Ins. Underwriters, Inc.*, Civ. A. No. H-07-1078, 2009 WL 2605314, at *38 n.30 (S.D. Tex. Aug. 21, 2009).

17

as agent for insured and not for insurer). An insurer may, by its own actions, "place an independent insurance agent 'in a position of apparent authority such that one might be justified in assuming that the agent had authority to receive notice." *Fleming, Ingram & Floyd*, 2009 WL 5166256, at *4 (citing *Kay-Lex Co. v. Essex Ins. Co.*, 649 S.E.2d 602 (Ga. App. 2007)). Glenbrook has not identified facts supporting an inference that to show its agent/broker should be considered Lexington's agent. Conejo's actions, including her communication of Glenbrook's questions about coverage, are consistent with its role as Glenbrook's agent.

Even setting this issue aside, the evidence does not show that Glenbrook and Lexington reached an impass over the value of the damage to Glenbrook's property. Nor does the evidence reveal a fact dispute material to determining waiver. Glenbrook argues that it "held a board meeting in November 2009 and invited the insurance agent, for the sole purpose of presenting to him the remaining disputes and issues with the hurricane Ike claim. Despite holding a board meeting with their agent, nothing further was done to reconcile this claim." (Docket Entry No. 26 at 5 (emphasis omitted)). This argument in Glenbrook's response is not evidence. *See, e.g,*, *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, Civ. A. No. 1:06cv0433 LTS-RHW, 2010 WL 3359564, at *2 (S.D. Miss. Aug. 25, 2010) ("It goes without saying that the argument of counsel is not evidence on which the Court can rely . . . ."). The only reference to a November 2009 meeting in the evidence submitted is an entry on a handwritten document labeled "Phone Log for Glenbrook's Insurance Claim." The entry reads, "10/18/09 — Contact Stan for mtg. Nov. 16th." (Docket Entry No. 26, Ex. B at 7, 11). "Stan" appears to refer to Stan Migura, of Migura Insurance Agency, Glenbrook's agent. (*See id.* at 7 (referring to "Donna @ Stan Migura's")). There is no evidence that the meeting took place, what it addressed, or whether any representative of Lexington or its agents attended. There is no basis to infer that this meeting communicated to Lexington an impasse about the amount

of loss Glenbrook suffered. *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) ("Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.").

The record contains no evidence that Glenbrook communicated to Lexington an impasse over value of the loss amount under the Policy before Glenbrook sued Lexington in state court.

### C. Whether to Stay the Litigation Pending Appraisal

In many cases, the litigation is stayed while appraisal is completed. *See, e.g., Molzan, Inc. v. United Fire & Cas. Co.*, 2009 WL 2215092 (S.D. Tex.). In this case, however, the record makes clear that there are issues of both coverage and of loss valuation. Under such circumstances, the part of the litigation that involves loss valuation is appropriately stayed. The part of the litigation that involves coverage issues, however, should continue pending the appraisal.

### IV. Conclusion

Lexington's motion to compel appraisal is granted. During the appraisal, this case will proceed on coverage issues; the litigation on the loss valuation issues is stayed. The parties must notify this court when the appraisal is concluded and the result within 14 days after the appraisers issue their report.

SIGNED on February 14, 2011, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge